**UNITED STATES, Plaintiff,**

v.

**D–1 Terron M. NIXON, D–2 Maurice M. Curry, Defendants.**

No. 03–80793.

United States District Court,
E.D. Michigan,
Southern Division.

April 23, 2004.

Susan E. Gillooly, Sheldon N. Light, U.S. Attorneys Office, Detroit, MI, for Plaintiff.

Terry A. Price, Detroit, MI, for Defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

Defendants were indicted in this Court for possession to deliver less than 50 grams of cocaine and possession of a firearm in furtherance of a drug trafficking crime. Defendant Nixon was additionally indicted for being a felon in possession of a firearm. These indictments were filed in this Court as part of "Project Safe Neighborhoods," a national initiative spearheaded by the Justice Department and administered locally by the United States Attorney for the Eastern District of Michigan. As part of this Project, both defendants were originally charged only in State court. Each defendant was told that if he declined to accept a two-year plea offered by the State, they faced further proceedings in the federal court system, but they were not informed of the full range of the penalties available in the federal system. Both defendants declined the plea, and shortly afterward, the charges against them at the State level were dropped and the federal indictments were brought.

In federal court, both defendants made motions alleging ineffective assistance of counsel at the state level. Both defendants alleged that their attorneys at the

state level had not informed them sufficiently about what they faced at the federal level. Testimony offered in this Court bore that out.

Nixon was represented by two attorneys at the state level, Karri Mitchell and Donald Cook. Mitchell testified that he had never advised defendant Nixon about what he might face as a career offender in the federal system, and only a five-year minimum in the federal system had ever been mentioned to Nixon (March 1, 2004 Hearing Tr. 17, 31, 34–5.) Cook testified that he had advised Nixon only that he "could get five years." (11 March 2004 Hearing Tr. 5.) Defendant Nixon actually faced a minimum penalty in federal court of 262 months (approximately 22 years). Frederick Smith, who represented defendant Curry at trial, testified that he told his client he faced in federal court a five-year minimum and did not advise him as to the maximum penalty he faced. (11 March 2004 Hearing Tr. 32.) Mr. Curry in fact faced a minimum of ten years and a maximum of life imprisonment.

Sixth Circuit precedent holds that a failure to explain the sentencing exposure to a defendant can constitute ineffective assistance of counsel. *Smith v. United States*, 348 F.3d 545 (6th Cir.2003); *Moss v. United States*, 323 F.3d 445, 474 (6th Cir.2003). Moreover, disparity between a plea offer and the potential sentence exposure is strong evidence of a reasonable probability that a properly advised defendant would have accepted a guilty plea offer, even if the defendant has previously claimed to be innocent. *Id.*, citing *Magana v. Hofbauer*, 263 F.3d 542 (6th Cir.2001); *Griffin v. United States*, 330 F.3d 733 (6th Cir.2003).

Because I held the facts of the case would support a finding of ineffective assistance of counsel, I requested that counsel submit briefs regarding three potential remedies as well as any other remedy that might be appropriate. (11 March 2004 letter from Valerie J.M. Brader on behalf of the Hon. John Feikens, ¶ 1.) The United States argued in its brief that this Court did not have the power to grant any of these remedies, and made no suggestions as to other potential remedies that would be within this Court's power to grant.

■■■ It is permissible to construct a plea in state court that includes as a component a plea in federal court. *Waite v. United States*, 601 F.2d 259 (6th Cir.1979). It is also permissible for a federal court to dismiss a federal case in order to enforce a state court plea conditioned on the defendant declining to bring a federal civil claim. *Town of Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987). No less than five circuits have suggested that a state prosecutor's plea bargain can be enforced against federal prosecutors if the federal and state prosecutors have been in sufficient cooperation to find that federal prosecutors are parties to the offer, in that they have agreed to be bound by the state prosecutor's offer. *Pinaud v. James*, 851 F.2d 27, 31 (2nd Cir. 1988); *Montoya v. Johnson*, 226 F.3d 399, 405–6 (5th Cir.2000); *United States v. Fuzer*, 18 F.3d 517, 520 (7th Cir.1994); *Hendrix v. Norris*, 81 F.3d 805, 807 (8th Cir.1996); *Meagher v. Clark*, 943 F.2d 1277, 1281–2 (11th Cir.1991).

■■■ Therefore, in order to decide whether any remedy was available in federal court, this Court would need to know the level of cooperation that exists between the prosecutors as part of Project Safe Neighborhoods.[1] Toward that end, counsel for defendant Nixon requested that this Court issue a subpoena to the federal government requesting "any and all information" relating to the dual prose-

---

**1.** My own research, which this Court distrib-

uted to counsel on 22 March 2004, indicated

cution agreement between the U.S. Attorney's Office and the Wayne County Prosecutor's Office that is part of Project Safe Neighborhoods. (Hearing, 6 April 2004.) The subpoena specifically made the following information requests, some of which I had already informally requested from the U.S. Attorney's Office:

- e-mails or other writings regarding or comprising the Memorandum/Memoranda of Understanding between the Federal government and the Wayne County Prosecutor's Office;
- the record of any Federal funding used to hire, train and staff state prosecutors as part of Project Safe Neighborhoods;
- training materials provided to State Project Coordinators for the Project Safe Neighborhoods initiatives;
- Memorandum or Project Guidelines authorizing or delegating powers to state prosecutors to dispose of potential federal cases as part of Project Safe Neighborhoods;
- Reports or summaries regarding Federal oversight of Project Safe Neighborhoods; and
- Statistics distinguishing between cases resolved by plea in State court and those referred for prosecution in Federal court.

At the hearing on 6 April 2004, I stated that I had never had difficulty obtaining information from the U.S. Attorney's Office, and therefore, I would not order them to produce these documents. However, I did note that if the government did not agree to turn over this information, I would order it to do so. At the 13 April

2004 hearing, the government stated it would not produce these documents voluntarily and that it would move to dismiss the federal indictments as to both defendants.

Because there are a large number of cases filed in the Eastern District of Michigan as part of Project Safe Neighborhoods, and because similar difficulties may present themselves in further proceedings, I feel it is my responsibility to make a report to my fellow judges about the nature of Project Safe Neighborhoods. To that end, I order the government to produce those documents described here for *in camera* review on or before 7 June 2004.

**IT IS SO ORDERED.**

that under a "gun case referral agreement," more than 300 cases had been referred for federal prosecution in the Eastern District of Michigan, presumably after defendants declined a plea in state court. There were also materials stating that in some cases, federal funds under the program were being used to

hire state prosecutors to handle cases under the Project Safe Neighborhoods rubric, and in others, teams of federal and state prosecutors were cooperatively preparing the cases and together selecting the forum in which each case should be brought.